CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
 San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
 San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg @ potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Raul Uriarte-Limon**, | **Case:** 5:16-CV-00194-JGB-KK |
| Plaintiff, | **Plaintiff's Memorandum of Points and Authorities** |
| v. | Date: November 21, 2016<br>Time: 9:00 a.m.<br>Ctrm: 1 |
| **Julissa L. Leyva;**<br>**James Moffat;** | |
| Defendants. | |
| | Hon. Judge Jesus G. Bernal |

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES ...........................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.    PRELIMINARY STATEMENT ...........................................................1

II.   RELEVANT FACTS ......................................................................2

III.  LEGAL STANDARD .....................................................................3

IV.   THE LACK OF ACCESSIBLE PARKING ................................................4

    A.  Plaintiff is Disabled .................................................................6

    B.  Defendants Own and Operates a Place of Public Accommodation .............6

    C.  The Restaurant Had Barriers .......................................................6

    D.  The Barriers Are and Were Readily Achievable to Remove .....................9

    E.  The Plaintiff Encountered This Violation and Is Being Deterred From
        Patronage ........................................................................... 10

V.    THE LACK OF COMPLIANT PARKING IS UNLAWFUL UNDER
CALIFORNIA LAW ...................................................................... 11

VI.   REMEDIES ............................................................................... 11

VII.  CONCLUSION ........................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*
603 F.3d 666 (9th Cir. 2010)..................................................................4

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ............................................................................3

*Chapman v. Pier 1 Imports (U.S.) Inc.*
631 F.3d 939 (9th Cir. 2011)...........................................................4, 7

*Cullen v. Netflix, Inc.,*
880 F.Supp.2d 1017 (N.D. Cal. 2012) ................................................11

*D'Lil v. Best Western Encina Lodge & Suites,*
538 F.3d 1031 (9th Cir. 2008)............................................................12

*Doran v. 7-Eleven, Inc.,*
524 F.3d 1034 (9th Cir. 2008)............................................................11

*Moeller v. Taco Bell Corp.*
816 F.Supp.2d 831 (N.D. Cal. 2011) ...................................................5

*Molski v. M.J. Cable, Inc.,*
481 F.3d 724 (9th Cir. 2007)........................................................11, 12

*Rush v. Denco Enterprises, Inc.,*
857 F. Supp. 2d 969 (C.D. Cal. 2012) ..................................................7

*Wilson v. Pier 1 Imports (US), Inc.,*
439 F.Supp.2d 1054 (E.D. Cal. 2006)..................................................10

**Statutes**

42 U.S.C. § 12102(2)(A) .......................................................................6

42 U.S.C. § 12181(7)(B) .......................................................................6

42 U.S.C. § 12181(7)(F) ........................................................................6

42 U.S.C. § 12188(a) .........................................................................6,11

ii

42 U.S.C. §§ 12183(a)(1) ................................................................ 9

Cal. Civ. Code § 55.56(a) ........................................................... 12

Cal. Civ. Code § 55.56(b) ........................................................... 12

Cal. Civ. Code § 55.56(e) ........................................................... 12

Cal. Civ. Code § 52(a)……………………………………………..12

Civ. Code § 51 (f) ....................................................................... 11

**Other Authorities**

1991 Standards § 4.1.2(5)............................................................. 7

1991 Standards § 4.1.2(5)(b) ....................................................... 7

1991 Standards § 4.6.3 ................................................................. 9

2010 Standards § 502.2. .............................................................. 9

2010 Standards § 502.4 Advisory................................................ 9

2010 Standards 502.4 .................................................................. 9

28 C.F.R. § 36.304(b) (18) ........................................................ 10

36 C.F.R., Part 1191, § 502.3.3……………………………………..8

CBC § 1129B.4............................................................................ 8

CBC § 11B-502.2 ........................................................................ 8

CBC § 11B-502.3.3 .................................................................. 8, 9

Department of Justice, Technical Assistance Manual on the American

   with

     Disabilities Act (BNA) §§ III-4.4100 (1991) ..................................... 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PRELIMINARY STATEMENT

Mr. Uriarte-Limon is a paraplegic who uses a wheelchair for mobility. His activities are limited due to his disability, but he immensely enjoys the independence of traveling, attending various events, and going to restaurants and shops. Unfortunately, he has had to deal with the stress and frustration of the lack of accessible parking and other features that non-disabled people take for granted.

This occurred during visit to Tamales & Tacos restaurant in February 2015. Instead of simply being able to park and go inside the Restaurant, Mr. Uriarte-Limon once again found himself in the disappointing and frustrating, yet all-too-familiar situation of struggling to find van accessible parking, only to realize that he will not be able to park and enter the Restaurant. A simple thing like parking your car and entering a Restaurant is a basic right that was unequivocally denied to Mr. Uriarte-Limon, and it was embarrassing and troublesome for him.

Although the law has required these simple accommodations for disabled Americans for 25 years, Mr. Uriarte-Limon is continuously confronted with inaccessible bars, restaurants, shops, hotels, and the like. And, he has been vilified for his decision to haul law breaking businesses before courts and tribunals of the state to hold them accountable. In this case, the Defendant's failure to provide accessible parking is illegal and discriminatory under the ADA and has been for 25 years.

In this motion, Plaintiff is seeking a ruling that his rights were violated under the Unruh Civil Rights Act, a single statutory penalty of $4,000, and an Order requiring Defendants to make the parking at the subject property accessible, as defined by the Americans with Disabilities

1

1    Act Accessibility Guidelines ("ADAAG"). Plaintiff respectfully requests

2    this Court grant his motion.

3

4    **II.  RELEVANT FACTS**

5        Plaintiff Raul Uriarte-Limon is a paraplegic who cannot walk and

6    who uses a wheelchair for mobility. (SUF #1). Mr. Uriarte-Limon has a

7    Disabled Person Parking Placard issued to him by the California

8    Department of Motor Vehicles. (SUF #2). Mr. Uriarte-Limon needs a

9    parking space marked and reserved for persons with disabilities along with

10   an access aisle so that he can assemble his wheelchair before transferring

11   from his wheelchair into his vehicle, and disassembling his wheelchair

12   after transferring into his vehicle. (SUF #3).

13       The Tamales & Tacos restaurant is located at or about 8111-B

14   Foothill Blvd, Rancho Cucamonga, California, ("Restaurant"). (SUF #4).

15   The Restaurant is a business establishment and place of public

16   accommodation. (SUF #5). Defendant Julissa Leyva is the business owner

17   of the Restaurant currently, and was in February 5, 2015. (SUF #6).

18   Defendant James Moffatt is the master leaseholder for the Restaurant, and

19   was in February 2015. (SUF #7).

20       Parking spaces are one of the facilities, privileges and advantages

21   offered by the Defendants to the customers of the Restaurant. (SUF #8).

22   On February 5, 2015, Mr. Uriarte-Limon went to the Restaurant to buy

23   tamales. (SUF #9). On February 5, 2015, Mr. Uriarte-Limon found that

24   there was not a single parking space marked and reserved for use by

25   persons with disabilities. (SUF #10). Because there were no designated

26   accessible parking spaces, Mr. Uriarte-Limon had no choice but to park in

27   a regular parking space in the middle of the parking lot where there

28   currently were no other cars parked next to him. (SUF #11). This caused

2

Mr. Uriarte-Limon difficulty, discomfort and frustration because he feared that other cars would park next to his vehicle while he was in the Restaurant and prevent him from getting back inside his vehicle. (SUF #12).

Sometime subsequent to February 5, 2015, a designated accessible parking space for persons with disabilities was installed at the Restaurant. (SUF #13). However, the parking space remains out of compliance. There is no tow-away signage displayed at or near the designated accessible parking space. (SUF #14). The access aisle of the designated accessible parking space was irregular in shape, measuring only 35 inches at its narrowest point, and also did not contain the words "NO PARKING." (SUF #15). There is also a built-in curb ramp that extends into the access aisle of the Disabled Space which has a slope of 5.7%. (SUF #16).

Providing accessible parking is readily achievable for Defendant. (SUF #17). Mr. Uriarte-Limon lives about 10 miles from the Restaurant. It is therefore a convenient place for him to stop for food. He would like the ability to safely and independently park and access the Restaurant. (SUF #18). Once the barriers are removed, Mr. Uriarte-Limon will return to and patronize the Restaurant. (SUF #19).

### III.   LEGAL STANDARD

Pursuant to section 56 of the Federal Rules of Civil Procedure, a party can bring a motion for summary judgment where there is no genuine dispute as to any material fact. Motions for summary judgment are not "disfavored." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In the present case, there can be no genuine dispute over the facts of the case and those facts inform the court and the parties that it would be a waste of

3

judicial resources for this case to proceed to trial. There is no genuine issue
of material fact and this court should grant the Plaintiff's motion.

## IV.  THE LACK OF ACCESSIBLE PARKING

Under Title III of the Americans With Disabilities Act of 1990
("ADA"), the general rule is that: "No individual shall be discriminated
against on the basis of a disability in the full and equal enjoyment of the
goods, services, facilities, privileges, advantages, or accommodations of
any place of public accommodation by any person who owns, leases (or
leases to), or operates a place of public accommodation." 42 U.S.C. §
12182(a). The term "discrimination" can be misleading. The ADA applies
not just to intentional discrimination but to thoughtlessness and
indifference:

> Its passage was premised on Congress's finding that
> discrimination against the disabled is most often the product,
> not of invidious animus, but rather of thoughtlessness and
> indifference, of benign neglect, and of apathetic attitudes
> rather than affirmative animus. The concept of
> "discrimination" under the ADA does not extend only to
> obviously exclusionary conduct—such as a sign stating that
> persons with disabilities are unwelcome or an obstacle course
> leading to a store's entrance. Rather, the ADA proscribes
> more subtle forms of discrimination—such as difficult-to-
> navigate restrooms and hard-to-open doors—that interfere
> with disabled individuals' "full and equal enjoyment" of
> places of public accommodation.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir.
2011) (internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that:
(1) he is disabled within the meaning of the ADA; (2) the defendant is a
private entity that owns, leases, or operates a place of public
accommodation; and (3) the plaintiff was denied public accommodations
by the defendant because of his disability." *Arizona ex rel. Goddard v.*

*Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman*, 631 F.3d at 945. This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);
2. The defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;
3. The defendants must be responsible parties, i.e., owners, operators, lessors or lessees. *Id.*;
4. The defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove. 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);
5. Plaintiff must have actually encountered this non-removed and unlawful barrier. 42 U.S.C. § 12188(a).

As discussed below, Mr. Uriarte-Limon's civil rights were violated because the Defendants failed to provide accessible parking at the Restaurant. Plaintiff will discuss each element, seriatim.

## A.     Plaintiff is Disabled

Mr. Uriarte-Limon is a man with severe mobility impairments who cannot walk and uses a wheelchair for mobility. (SUF #1). There can be little doubt that he fits the qualification under the Americans with Disabilities Act as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability).  Given Mr. Uriarte-Limon's inability to walk, this is not a genuine issue.

## B.     Defendants Own and Operates a Place of Public Accommodation

The Restaurant is an establishment serving food and/or drinks. Restaurants and bars are expressly identified under the ADA as places of public accommodation. 42 U.S.C. § 12181(7)(B). The Defendants own and/or operate this place of public accommodation. (SUF #6-7). Therefore, Defendants have an obligation to comply with the anti-discrimination provisions of Title III of the Americans with Disabilities Act.

## C.     The Restaurant Had Barriers

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

1    Department of Justice, Technical Assistance Manual on the American with
2    Disabilities Act (BNA) §§ III-4.4100 (1991). Case law is more specific.
3    "To determine if Plaintiff describes an 'architectural barrier' the Court
4    must turn to the ADA Accessibility Guidelines for Buildings and Facilities
5    ("ADAAG"). If an element does not meet or exceed ADAAG standards,
6    it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857
7    F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any
8    element in facility that does not meet or exceed the requirements set forth
9    in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.)*
10    *Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal
11    position of the Department of Justice). These are "objective" and
12    "precise" standards and "the difference between compliance and
13    noncompliance" is "often a matter of inches." *Id.* In the present case, there
14    were "barriers" to allowing equal access at the parking at the Restaurant
15    on the date of Mr. Uriarte-Limon's visit.

16         The lack of accessible parking constitutes a barrier. Under the 1991
17    Standards, any business that provides parking spaces must provide
18    parking spaces marked as reserved for persons with disabilities. 1991
19    Standards § 4.1.2(5). One in every eight of those accessible parking
20    spaces, but not less than one, must be a "van" accessible parking space,
21    *i.e.*, having an eight foot (96 inch wide) access aisle. 1991 Standards §
22    4.1.2(5)(b). Under the 2010 Standards, one in every six of those accessible
23    parking spaces, but not less than one, must be "van" accessible, i.e. having
24    an eight foot access aisle, or alternatively, having a stall measuring 132
25    inches in width with a 60 inch adjacent access aisle. 2010 Standards §
26    502.2.[1]

27

28    [1] The Plaintiff recognizes that, technically, either the 1991 Standards or the 2010
   Standards govern in this case, but not both simultaneously. However, both Standards

1    Further, to qualify as a reserved accessible parking space, the space

2    must be properly marked and designated. Under the ADA, the method,

3    color of marking, and length of the parking space are to be addressed by

4    State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3.

5    Under the California Building Code, to properly and effectively reserve a

6    parking space for persons with disabilities, each parking space must be at

7    least 216 inches in length. CBC § 11B-502.2. Each accessible parking stall

8    must have an access aisle adjacent to it. Standard accessible parking stalls

9    can have a 60 inch wide access aisle while van accessible stalls must have

10   a 96 inch wide access aisle. 1991 Standards § 4.1.2(5)(a)&(b) and 2010

11   Standards § 502.2. The words "NO PARKING" shall be painted on the

12   ground within each 8-foot… loading and unloading access aisle. This

13   notice shall be painted in white letters no less than 12 inches… high and

14   located so that it is visible to traffic enforcement officials." CBC § 11B-

15   502.3.3.

16   The failure to have an access aisle is a violation of the ADA.

17   Additionally, to properly and effectively reserve a parking space for

18   persons with disabilities, each such space must be identified with a

19   reflectorized sign permanently posted adjacent to and visible from each

20   stall or space. CBC § 1129B.4. The sign must consist of the International

21   Symbol of Accessibility "ISA" (□) in white on a blue background. *Id.* An

22   additional sign or additional language below the symbol of accessibility

23   must state, "Minimum Fine $250" to ensure that the space remains

24   available for persons with disabilities. *Id.* Another sign must be posted in

25   a conspicuous place at the entrance to the parking lot or immediately

26   adjacent to each handicap parking space, with lettering 1 inch in height,

27

28   are cited to demonstrate that it does not matter which Standard is applied because the
parking did not comply with either Standard.

8

1    that clearly and conspicuously warn that unauthorized vehicles parking in
2    the handicap parking spaces can be towed at the owner's expense. *Id.*

3         Here, the Restaurant did not have a single accessible parking space
4    on the date of Plaintiff's visit on February 5, 2015. (SUF # 9-11).
5    Moreover, although Defendants have now installed an accessible parking
6    space, it is still not fully compliant. Because the Defendants recently
7    installed the parking space, the stricter new construction standard applies
8    rather than a readily achievable standard. 42 U.S.C. §§ 12183(a)(1).

9         Currently, the designated accessible parking space is not compliant
10   for several reasons. First, the California tow-away sign is missing. (SUF#
11   14). Additionally, there is a built up curb ramp that runs into the access
12   aisle with a slope measuring 5.7%. (SUF #16). This is not compliance
13   because under the 1991 Standards parking spaces and access aisles must
14   be level with surface slopes not exceeding 1:50 (2%) in all directions.
15   1991 Standards § 4.6.3. Under the 2010 Standards, access aisles shall be
16   at the same level as the parking spaces they serve. Changes in level are
17   not permitted. 2010 Standards 502.4. "Access aisle are required to be
18   nearly level in all directions to provide a surface for wheelchair transfer
19   to and from vehicles." 2010 Standards § 502.4 Advisory.

20        Finally, the access aisle is irregular in shape, measuring only 35
21   inches at its narrowest point, and therefore does not provide the required
22   96-inch width. Moreover, the access aisle does not contain the words "NO
23   PARKING." (SUF #15).

24
25   **D.     The Barriers Are and Were Readily Achievable to Remove**
26        As noted above, because Defendants installed a new accessible
27   parking space, compliance is now determined under a new construction
28   standard. 42 U.S.C. §§ 12183(a)(1). Regardless, however, there is no

question about whether removal of these barriers was readily achievable. A cursory review of the Code of Federal Regulations indicates that this type of action, i.e., providing accessible parking, is of the type of action that is identified as likely to be readily achievable. 28 C.F.R. § 36.304(b)(18). More importantly, as can be seen in the investigator's photographs, Defendants have already taken steps to provide an accessible parking space, although the space is still not fully compliant. See Ex. 8, 9 (Photos by Louis); Ex. 13 (Photos by Taylor). In such circumstances, the question about whether barrier removal is readily achievable has been definitively answered.  See *Wilson v. Pier 1 Imports (US), Inc.*, 439 F.Supp.2d 1054, 1069 (E.D. Cal. 2006) ("Given that the barrier has already been cured, the court must find that it was readily achievable, and thus that it violated the ADA and subsequently the Unruh Act."). All of these reasons demonstrate that the fix was readily achievable. (See SUF # 17).

In sum, the Defendants failed to remove barriers that were readily removed, and then failed to comply with new construction standards thereafter. Therefore, Defendants violated the Plaintiff's rights under the ADA.

**E.     The Plaintiff Encountered This Violation and Is Being Deterred From Patronage**

As established above, the Restaurant was not accessible to disabled persons in February 2015, and it is still not accessible today. Thus, not only did Mr. Uriarte-Limon personally encounter the violations, but he faces the threat of continued and repeated violations.  The Restaurant is conveniently located, therefore, Mr. Uriarte-Limon desires to return and patronize the Restaurant. (SUF# 18, 19). However, he will still be deterred from visiting because there are barriers that still exist. (SUF # 14-16).

1   In sum, there has been a violation of the American with Disabilities
2   Act.
3
4   **V.   THE LACK OF COMPLIANT PARKING IS UNLAWFUL**
5   **UNDER CALIFORNIA LAW**
6   The Unruh Civil Rights Act provides that "a violation of the right
7   of any individual under the Americans with Disabilities Act of 1990 shall
8   also constitute a violation of this section." Civ. Code § 51 (f).  "A violation
9   of the ADA is, by statutory definition, a violation of both the Unruh Act
10  and the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal.
11  2012). "Because the Unruh Act is coextensive with the ADA and allows
12  for monetary damages, litigants in federal court in California often pair
13  state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731.
14  As discussed above under section "IV", the defendants violated the ADA.
15  Thus, there has been a per-se violation of Unruh.
16
17  **VI.   REMEDIES**
18  The Plaintiff seeks both injunctive relief and statutory damages.
19  Under the ADA, the plaintiff is entitled to injunctive relief. 42 U.S.C. §
20  12188(a). Such injunctive relief "shall include an order to alter facilities
21  to make such facilities readily accessible to and useable by individuals
22  with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2).
23  Mr. Uriarte-Limon has standing to seek the fix. "Allegations that a
24  plaintiff has visited a public accommodation on a prior occasion and is
25  currently deterred from visiting that accommodation by accessibility
26  barriers establish that a plaintiff's injury is actual or imminent." *Doran v.*
27  *7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008). "We have found
28  actual or imminent injury sufficient to establish standing where a plaintiff

1   demonstrates an intent to return to the geographic area where the
2   accommodation is located and a desire to visit the accommodation if it
3   were made accessible." *D'Lil v. Best Western Encina Lodge & Suites*, 538
4   F.3d 1031, 1037 (9th Cir. 2008). Mr. Uriarte-Limon lives about 10 miles
5   from the Restaurant. It is therefore a convenient place for him to stop for
6   food. He would like the ability to safely and independently park and
7   access the Restaurant. (SUF #18). Once the barriers are removed, Mr.
8   Uriarte-Limon will return to and patronize the Restaurant. (SUF #19).

9        Statutory damages can be recovered for a violation of the Unruh
10   Civil Rights Act "if the violation denied the plaintiff full and equal access
11   to the place of public accommodation on a particular occasion." Cal. Civ.
12   § 55.56(a). A denial of full and equal access takes place where a plaintiff
13   "personally encountered" the violation and it resulted in "difficulty,
14   discomfort or embarrassment." Cal. Civ. § 55.56(b). Under the Civil
15   Code, the plaintiff is entitled to recover a statutory penalty for "each
16   offense" (Cal. Civ. Code § 52(a)) which has been defined as "each
17   particular occasion that the plaintiff was denied full and equal access . .
18   .." Cal. Civ. Code § 55.56(e). A plaintiff can recover for both actual
19   encounters and occasions where personal knowledge of a barrier deterred
20   the plaintiff from attempting patronage. Cal. Civ. § 55.56(b).

21        Here, Mr. Uriarte-Limon personally encountered the access
22   standards violations on his February 5, 2015 visit. Thus, Mr. Uriarte-
23   Limon seeks a single statutory penalty. There are no genuine issues in
24   dispute here and the Plaintiff is entitled to the statutory award of $4,000
25   under the Unruh Civil Rights Act for his single encounter. "The litigant
26   need not prove she suffered actual damages to recover the independent
27   statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724,
28   731 (9th Cir. 2007). Plaintiff seeks an award of $4,000.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VII.   CONCLUSION

The Plaintiff respectfully requests this Court grant his motion.


Dated: October 24, 2016              CENTER FOR DISABILITY ACCESS


                                     By: /s/ Isabel Rose Masanque
                                     Isabel Masanque
                                     Attorneys for Plaintiff

13